UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE RICHARD LONG,<br><br>    Petitioner,<br><br>    v.<br><br>RAYBON JOHNSON,<br><br>    Respondent. | No.  2:21-cv-00256-CKD (HC)<br><br><u>ORDER</u> |

Petitioner is a California state prisoner proceeding pro se with this habeas corpus action challenging his 2018 conviction for making criminal threats.  The parties have consented to have all matters in this action before a United States Magistrate Judge.  <u>See</u> 28 U.S.C. § 636(c); ECF Nos. 6, 7.  Upon careful consideration of the record and the applicable law, the court denies petitioner's habeas corpus application for the reasons set forth below.

    **I.**    **Factual and Procedural History**

Petitioner was charged with second degree robbery, assault with a deadly weapon, and making criminal threats based on an altercation over a bicycle.  Following a jury trial, petitioner was convicted of criminal threats and sentenced to 9 years in prison.

    **A. State Direct Appeal**

On August 12, 2019, the judgment was affirmed on direct appeal, but the case was remanded for the trial court to consider exercising its discretion to strike a sentencing

enhancement. See ECF No. 8-8 (direct appeal opinion). The California Supreme Court denied review on November 13, 2019. See ECF No. 8-9.

After independently reviewing the record, this court finds the state appellate court's summary of the evidence accurate and adopts it herein.[1]

Prosecution's Case

> Amy J. testified she was talking to two teenaged males when petitioner[2] walked up and tried to take one of her two bicycles from her. He claimed the bicycles were his. Petitioner was aggressive, "[s]natching and pulling and yelling and calling [her names]." Amy felt like she was in danger.
>
> Amy and petitioner each held on to one of the bicycles, doing a tug of war. Petitioner called her "bitches and 'hos" and said "you need to be on the track, you don't know who you are fucking with, [I am] Del Paso Heights 'Zilla" and he was "going to beat [her] ass." Amy understood the "Del Paso Heights 'Zilla" comment to mean petitioner was a gang lord. When asked whether she took the comment as a threat, Amy said she did and was intimidated by it.
>
> According to Amy, petitioner pushed her in the chest with one hand and pulled a red box cutter from his pants with the other. He extended the blade and waived it at her. Amy told him to stop and asked others to call the police. Petitioner let go of the bicycle, kicked her other bicycle on the ground, and said "I'm going to bust your head to the white meat." Although Amy did not know what "busting your head into white meat" meant,[] she "felt really scared" and thought petitioner was going to hurt her. She did not, however, show him that she was scared because she was taught not to show fear. Petitioner got more aggressive and "kept saying 'Uz.'"
>
> A woman in a vehicle yelled at petitioner to stop and said she had called the police and they were on the way. Petitioner responded he "d[id]n't give a fuck" and kept tugging for the bicycles and making threats. When the police arrived, however, petitioner walked away.
>
> Two witnesses observed the altercation. One testified she saw a man grabbing a bicycle from someone, likely a woman, and heard multiple people yelling. She also saw a different person waving something like a scooter around. The witness called 911[] out of fear the woman was going to get hurt "[b]ecause there were a few men standing around there [who] could [have] harm[ed] her."
>
> The second witness testified she saw petitioner and a woman with

---

[1] See 28 U.S.C. § 2254(e)(1) (emphasizing that "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts it by clear and convincing evidence).

[2] All references to "defendant" have been changed to "petitioner" to reflect the current posture of the parties in this case.

2

their hands on the same bicycle and it looked like he was trying to take it away from her. They were yelling at each other and the woman said something to the effect of "[n]o, you can't take this" or "[n]o, you're not going to take this." Petitioner was aggressive toward the woman; the woman looked scared and her body language was defensive. The woman held something like a scooter in her hand and waived it in a forward motion "as a way to sort of push him away." The witness recorded the incident on her phone and called 911 -- she thought the woman was going to get beat up or killed.[] She honked her horn and yelled that she had called the police but, although petitioner appeared to relax, he did not release his grip on the bicycle. The woman was ultimately able to leave with her bicycle.

Two police officers testified. Sacramento Police Officer Daniel Mejorado found a red box cutter on petitioner when he searched him. Sacramento Police Officer Robert Lindner testified regarding his interview of another witness. The witness told Officer Lindner that a woman with two bicycles came up to him and his friend when another man started accusing her of taking his bicycle. The man tried to grab the bicycles from the woman and a struggle ensued. The man and woman argued back and forth; the man held a blade like a box cutter in his hand but he was not threatening the woman with it.

### Defense's Case

Petitioner testified on his own behalf. He said his bicycle was across the street when he fell asleep and in the morning his bicycle was gone. Amy had his bicycle, told him she took it, and launched racial slurs at him. He said one of the two bicycles Amy had with her was his; he saw her with it. Although not directly testified to, petitioner intimated that he and Amy were struggling over his bicycle that day.

Petitioner said Amy told him she was the orchestrator of a bicycle theft ring and was "talking real greasy to [him], like a real street-like gang-related individual." He never got physical with her, pushed her, or swung a box cutter at her. He walked away and told her to keep the bicycle because he did not want any trouble.

When asked whether Amy "ha[d] anything on her besides standing next to the bikes," petitioner said she had a bicycle pump with her and swung it at him, hitting him about four to five times on the arm, and telling him she was "going to bust [his] head to the white meat." Petitioner said the statement was common street slang for "[y]ou bust somebody's head open and they got a layer of white meat under there."

During cross-examination, petitioner said his trial testimony was consistent with the statement he gave to police. He denied making a statement to police that he told Amy he was going to keep her bicycle until she returned his bicycle to him; he confirmed he was holding on to his bicycle that day and said he was not trying to take hers. Although not mentioned during his direct testimony, petitioner testified during cross-examination that Amy had a knife during the altercation and swung it at him.

3

> On redirect, petitioner said he asked the police officer to search Amy for the knife, but the officer just made fun of him. Petitioner also testified he asked the officer to talk to his uncle across the street, but the officer did not agree to do so.
>
> Prosecution's Rebuttal
>
> The prosecution called Officer Mejorado as a rebuttal witness. Officer Mejorado had taken petitioner's statement at the scene of the incident and his body camera recorded the interview. A video of the interview was played for the jury, and the officer confirmed the video was an accurate depiction of the statement given. In the interview, petitioner first said Amy took his bicycle, then he said she told him a white male took his bicycle, and he also said Amy put his bicycle in a car. Further, he said he grabbed Amy's bicycle to take it "hostage" to secure return of his bicycle; he did not know where his bicycle was. When he told Amy that he was not going to give the bicycle back until she returned his, Amy swung a pocket knife and bicycle pump at him. She hit him in the arm with the pump three or four times and said she was going to bust his head open. The video did not show petitioner requesting that the police search Amy or talk to his uncle across the street.
>
> Officer Mejorado confirmed the bicycle Amy had with her on the day of the incident did not match the description of the bicycle petitioner claimed was stolen.

ECF 8-8 at 2-6 (footnotes omitted).

**B. Federal Habeas Corpus Application**

In his habeas corpus application, petitioner raises two claims for relief. ECF No. 1. He first alleges that his trial counsel was ineffective for failing to object to gang evidence and for failing to request a limiting instruction to the jury on its use. According to petitioner, the gang evidence allowed the jury to punish him for being a gang leader even though no evidence proved this. ECF No. 1 at 64. If the trial court had given the jury a limiting instruction, the jury would not have used the gang evidence to convict petitioner of criminal threats based on its belief "that he was a gang lord, who must have threatened Ms. Jackson because gangs operate by intimidating people." ECF No. 1 at 69. Lastly, petitioner contends that the prosecutor committed misconduct for misstating the law during closing argument by encouraging the jury to consider petitioner's non-testimonial behavior during trial as evidence of his guilt. To the extent that trial counsel did not object to the prosecutor's comments, petitioner further asserts that he was denied the effective assistance of counsel in violation of the Sixth Amendment.

Respondent filed an answer asserting that the state court reasonably rejected petitioner's ineffective assistance of counsel claim because the gang evidence was properly admitted under state law. ECF No. 9 at 8. Trial counsel is not constitutionally required to make futile arguments. ECF No. 9 at 8. Respondent also points out that petitioner cannot establish that "the jury was too likely to become inflamed by the [gang] evidence… on a record reflecting acquittal on a majority of the charges." ECF No. 9 at 9 (citing Park v California, 202 F.3d 1146, 1150 (9th Cir. 2000) (stating that "[w]e have held that the failure of the jury to convict on all counts is 'the best evidence of the jury's ability to compartmentalize the evidence.'"). Likewise, trial counsel was not ineffective for not requesting a limiting instruction. With respect to petitioner's second claim, habeas relief is not warranted because "[i]t cannot be said that all reasonable jurists at the time of finality of the judgment (Feb.17, 2020) would have found it apparent that the Constitution bars a prosecution comment on a in-court demeanor of a testifying defendant." ECF No. 9 at 10-11 (citing Allen v. Woodford, 395 F.3d 979, 997 (9th Cir. 2005)).

In a statement docketed on October 18, 2021, which the court construes as a traverse, petitioner argues that the evidence introduced at trial confirmed that he did not swing a box cutter at Amy or verbally threaten her. ECF No. 12. Petitioner submits that he is innocent of the charge for which he was convicted because the prosecutor argued that he could be convicted based on his courtroom behavior. ECF No. 12.

## II. Legal Standards

### A. AEDPA Standard

To be entitled to federal habeas corpus relief, petitioner must affirmatively establish that the state court decision resolving the claim on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the

5

> state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000) ] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

Relief is also available under the AEDPA where the state court predicates its adjudication of a claim on an unreasonable factual determination. 28 U.S.C. § 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court. See also Cullen v. Pinholster, 563 U.S. 170 (2011). Under § 2254(d)(2), factual findings of a state court are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret

6

"unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

If petitioner meets either of the 28 U.S.C. § 2254(d) standards, then the federal habeas court reviews the merits of the constitutional claim under pre-AEDPA standards in order to be entitled to relief. Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc). While there is no required order in which these two inquiries must be conducted, federal habeas courts generally apply Section 2254(d) analysis first because it is a high hurdle for petitioners to overcome.

In applying these standards, federal courts review the last reasoned state court decision on each claim for relief. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst, 501 U.S. at 803; see also Gill v. Ayers, 342 F.3d 911, 917 n. 5 (9th Cir. 2003) (explaining that federal courts "look through" unexplained rulings of higher state courts to the last reasoned decision). When there is no reasoned state court decision or what is known as a silent denial, federal courts must conduct an independent review of the record to determine what rational could support the state court judgment and whether such rational was an objectively reasonable application of federal law. See Harrington v. Richter, 562 U.S. 86, 102 (2011); Cullen v. Pinholster, 563 U.S. 170 (2011); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

### B.  Ineffective Assistance of Counsel

The two prong Strickland standard governing ineffective assistance of counsel claims is well known and oft-cited. Strickland v. Washington, 466 U.S. 668 (1984). It requires petitioner to establish (1) that counsel's representation fell below an objective standard of reasonableness; and, (2) that counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 692, 694. "The question is whether an attorney's representation amounted to deficient performance under 'prevailing professional norms,' not whether it deviated from best practices or most

common custom." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citing Strickland, 466 U.S. at 690). Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Richter, 562 U.S. 86, 111-12 (2011)).

In reviewing a Strickland claim under the AEDPA, the federal court is "doubly deferential" in determining whether counsel's challenged conduct was deficient. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. 86, 105 (2011).

### C. Prosecutorial Misconduct

A defendant's due process rights are violated when a prosecutor's misconduct renders his or her trial "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181 (1986). In the context of closing arguments, the Supreme Court has held that it "is not enough that the prosecutors' remarks [be] undesirable or even universally condemned." Darden, 477 U.S. at 181. Rather, the improper comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id.

### III. Analysis

#### A. Ineffective Assistance of Counsel

The facts underlying petitioner's first claim for relief concern the victim's responses when asked about what petitioner was saying during the tug of war over the bicycle. See ECF No. 8-3 at 94 (Reporter's Transcript, Vol. I). The following exchange occurred during direct examination:

> Q[uestion] What exactly was he saying to you? What were the words used? You said he was calling you out your name.
>
> A[nswer] "He was calling me bitches and 'hos, you need to be on the track, you don't know who you are fucking with, he's Del Paso Heights 'Zilla."

8

> Q[uestion]  When he said he was Del Paso Heights 'Zilla, what did that mean to you?
>
> A[nswer]  A gang lord.
>
> Q[uestion]  Did you take that as a threat?
>
> A[nswer]  Yes.
>
> Q[uestion]  And did you feel intimidated by that?
>
> A[nswer]  Yes.

ECF No. 8-3 at 94.

Petitioner faults defense counsel for not objecting to this line of questioning or moving to strike the responses referring to Del Paso Heights 'Zilla.  In denying relief on this claim, the California Court of Appeal applied the two-part Strickland standard governing ineffective assistance of counsel claims.  ECF No. 8-8 at 7.  The state court first concluded that the challenged testimony "was relevant to the criminal threats charge as to the specific intent and sustained fear elements of the offense" and was not cumulative to other specific threats made by petitioner.  ECF No. 8-8 at 9.  Ultimately, the state court determined that defense counsel was not ineffective under Strickland because "[t]he testimony was brief and confined to elicit evidence in support of the offense charged" and was properly admitted.  ECF No. 8-8 at 10.  With respect to the failure to request a limiting instruction on this evidence, the state court determined that defense counsel may have made a tactical choice not to do so in order to not highlight the gang evidence.  Id.  "The prosecution's singular, very brief mention of Amy's gang-related testimony during closing argument does not render such a tactical decision unreasonable…."  Id. at 11.  Counsel's reasoned tactical omission was not a violation of the Sixth Amendment right to counsel under Strickland.  Id.  So the California Court of Appeal denied petitioner relief on this claim.

In this case, the state court found that defense counsel's performance was not deficient because the evidence was properly admitted and because it was a reasonable tactical decision not to request a limiting instruction which would have drawn attention to the gang evidence.  This was not contrary to nor an unreasonable application of clearly established federal law or the Strickland standard.  See e.g., Nguyen v. Hickman, 475 Fed. Appx. 180 (9th Cir. 2012) (unpub.)

(rejecting ineffective assistance of counsel claim based on trial counsel's failure to object to the introduction of gang affiliation evidence); see also United States v. Abel, 469 U.S. 45, 49 (1984) (finding gang evidence admissible when relevant to a material issue in the case). As to the failure to request a limiting instruction, petitioner does not present any evidence or argument to rebut the state court's conclusion that defense counsel's decision was a reasonable tactical choice. It thus fell within the wide range of choices deemed to be reasonable professional assistance under the Sixth Amendment. See Strickland, 466 U.S. at 689. Accordingly, petitioner is not entitled to federal habeas relief on his ineffective assistance of counsel claim.

### B. Prosecutorial Misconduct

In petitioner's second claim for relief, he asserts that the prosecutor's comments during closing argument rendered his trial fundamentally unfair and that his trial counsel's failure to object constituted ineffective assistance of counsel in violation of the Sixth Amendment. During closing argument, the prosecutor told the jury that it could "take into consideration" petitioner's "attitude about the case, including during the course of the trial, sitting in the courtroom and making comments throughout the whole trial…." ECF No. 8-3 at 261. The prosecutor also told the jury that it could consider petitioner's "[b]ody language…, [and r]eaction when confronted and body-worn camera was played… to decide whether someone remembers their original stories or not or whether it was all a surprise for their memory." ECF No. 8-3 at 261 (Reporter's Transcript). Defense counsel responded by arguing that the prosecutor "mentioned Mr. Long's behavior in court, that you can take that into account and that is supposed to say that he is guilty or something. There are 14 people in this room who never met Mr. Long, and he is being accused of some very serious crimes. He pled not guilty. He told you on the stand he didn't do the crimes that the district attorney wants you to believe he did. What would you do in a situation like that?" ECF No. 8-3 at 287.

After finding this issue to be novel, the California Court of Appeal assumed that the prosecutor's comments were error. ECF No. 8-8 at 15. However, it determined that such error was harmless even applying the beyond a reasonable doubt standard requested by petitioner. ECF No. 8-8 at 15 (applying the standard enunciated in Chapman v. California, 386 U.S. 18, 24

(1967)).  In reaching this conclusion, the state court focused on the fact that:  1) petitioner chose to testify putting his credibility at issue; 2) the prosecutor's comments were brief; 3) the comments did not include any negative characterizations of petitioner's in-court demeanor; and, 4) there was strong evidence establishing petitioner's lack of credibility including cell phone video of the incident.  ECF No. 8-8 at 15-16.

The California Court of Appeal decision is the last reasoned state court opinion denying petitioner's prosecutorial misconduct claim.  As such, it is what this court reviews for reasonableness under the AEDPA.  See Berghuis v. Thompkins, 560 U.S. 370, 380 (2010) (recognizing that where the state supreme court denied discretionary review, the state court of appeal decision is the relevant state court decision for AEDPA purposes).  Where, as in this case, a state court has determined that an error was harmless under the Chapman standard, "a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable."  Davis v. Ayala, 576 U.S. 257, 269 (2015) (quoting Fry v. Pliler, 551 U.S. 112, 119 (2007)) (emphasis in original).  In other words, a habeas petitioner must show that the state court's harmlessness determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Davis, 576 U.S. at 269-70 (quoting Richter, 562 U.S. at 103).  After reviewing the record, the court finds that the state court's harmless error review was not an unreasonable application of clearly established federal law.  In this case, petitioner chose to testify and to put his credibility at issue.  This was not a situation where the prosecutor's comments were made about a non-testifying defendant's courtroom demeanor or silence.  See United States v. Schuler, 813 F.2d 978, 979-82 (9th Cir. 1987) (finding prejudice from prosecutor's reference to courtroom demeanor of defendant who had elected not to testify when a prior trial had resulted in a hung jury); United States v. Pearson, 746 F.2d 787 (11th Cir. 1984) (reversing conviction on direct appeal due to cumulative prejudice resulting, in part, from prosecutor's comments that non-testifying defendant's courtroom behavior made him look "nervous" and "afraid"); United States v. Wright, 489 F.2d 1181 (D.C. Cir. 1973) (reversing conviction on direct appeal based on prosecutor's comment that the jury could use non-testifying defendant's courtroom demeanor as

evidence of guilt). Viewed in this context, fairminded jurists would agree with the California Court of Appeal's decision that the error was harmless under the Chapman standard.[3] See Richter, 562 U.S. at 103. The agreement of fairminded jurists in this case is demonstrated by reviewing other federal habeas petitions raising similar claims. See Borodine v. Douzanis, 592 F.2d 1202, 1210-11 (1st Cir. 1979) (affirming the denial of habeas relief based on prosecutor's comments that non-testifying defendant looked "calm" and "never had a shred of remorse" where defendant did not testify); Levinston v. Terhune, No. C-02-01969 RMW, 2006 WL 2583676 (N.D. Cal. Sept. 7, 2016) (denying habeas relief on claim that prosecutor discussed and the jury considered petitioner's non-testimonial demeanor during a fire alarm in a case where petitioner testified). Therefore, habeas relief is not warranted on this claim.

Even viewing petitioner's argument as an ineffective assistance of counsel claim does not warrant relief in this case.[4] The California Court of Appeal's examination of prejudice on the prosecutorial misconduct claim applies equally to the prejudice analysis of the Strickland claim. While prejudice based on trial counsel's error is defined as a reasonable probability of a different outcome, petitioner has failed to meet this standard. Strickland, 466 U.S. at 693. Any objection by trial counsel would not have changed the jury's assessment of petitioner's credibility based on his trial testimony. It was not only inconsistent with his contemporaneous statements to the police, but it was also contradicted by the cell phone video taken during the altercation. While petitioner argues that the jury had to believe his testimony, in part, to acquit him of the most serious charges, this does not mean that they were required to accept all of his testimony. Having conducted an independent review of the record based on the lack of a reasoned state court opinion

---

[3] The court finds it unnecessary to separately analyze whether petitioner can meet the Brecht prejudice standard applied on federal habeas review. See Brecht v. Abrahamson, 507 U.S. 619 (1993); see also Davis v. Ayala, 576 U.S. 257 at 268 (2015) (noting that "a federal habeas court need not 'formal[ly]' apply both Brecht and 'AEDPA/Chapman' standards).

[4] The state court did not separately address the ineffective assistance of counsel claim because it was raised in anticipation of respondent's argument that the prosecutorial misconduct claim had not been properly preserved for appellate review. See ECF No. 8-8 at 11 (noting the argument that the claim had been forfeited based on counsel's failure to object). Since the California Court of Appeal reviewed the prosecutorial misconduct claim on the merits, it was not necessary to separately determine whether trial counsel was ineffective for not objecting. As a result, there is no reasoned state court opinion on this claim.

on this claim, the court finds that the state court could have reasonably denied the ineffective assistance of counsel claim based on lack of prejudice as well. See Harrington v. Richter, 562 U.S. at 102. There is not a reasonable probability of a different outcome if counsel had objected to the prosecutor's closing argument in this case. See Strickland, 466 U.S. at 693. Petitioner's testimony related to the criminal threats charge was contradicted by other evidence from multiple sources including cell phone video. For all these reasons, the court denies relief on petitioner's ineffective assistance of counsel claim for failing to object to the prosecutor's closing argument.

**IV.     Conclusion**

Having determined that petitioner is not entitled to relief pursuant to 28 U.S.C. § 2254(d) on either of his two claims, the court denies his petition for writ of habeas corpus.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied.
2. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.
3. The Clerk of Court is directed to enter judgment and close this case.

Dated:  February 15, 2023

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/long0256.merits.consent

13